Order Form (01/2005)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 12 C 7621 | **DATE** | 11/13/2012 |
| **CASE TITLE** | Audie C. Murphy (N-74595) vs. Hardy, et al. | | |

**DOCKET ENTRY TEXT**

Plaintiff has paid the filing fee. Summonses, however, shall not issue. The complaint is dismissed pursuant to 28 U.S.C. § 1915A for failure to state a claim upon which relief may be granted. The case is terminated. This dismissal counts as one of Plaintiff's three allotted dismissals under 28 U.S.C. § 1915(g). Any other pending motions are denied as moot.

■[For further details see text below.]

Docketing to mail notices.

## STATEMENT

Plaintiff, Audie C. Murphy, a prisoner at Stateville Correctional Center, brings this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff has paid the filing fee.

Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt review of the complaint.

The following summary of Plaintiff's allegations are taken from his complaint and the exhibits attached to his complaint. *See Northern Ind. Gun & Outdoor Show, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998) (when a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations); *see also, Thompson v. Illinois Dep't of Professional Reg.*, 300 F.3d 750, 754 (7th Cir. 2002) (if a plaintiff attaches a document to his complaint and relies upon that document to form the basis of a claim, dismissal is appropriate if the document negates the claim).

Plaintiff alleges that a permanent visitation stop order (stop order) was put into place prohibiting LaVerne Huggins from visiting Plaintiff at prison. Exhibit 2 of Plaintiff's complaint indicates that the stop order was imposed against Huggins in May 1997, while Plaintiff was incarcerated at Menard Correctional Center. The exhibit states that Huggins had four visit restrictions under the name Huggins and also a restriction because she passed contraband in the visiting room while using an alias. In August 2006, Plaintiff wrote Menard Assistant Warden Ramos requesting that Huggins visitation restriction be lifted. Ramos informed Plaintiff that the policy required that the restricted visitor/offender request the lifting of the restriction. Subsequently, Huggins requested that he lift the visitation restriction. In a January 2007 letter, Ramos denied Huggins' request, citing her repeated visiting offenses and the serious nature of those offenses. The letter also indicated that she was eligible for a review of the restriction on a yearly basis from the date of the restriction.

At some point, Plaintiff was transferred to Stateville Correctional Center. In September 2008, Stateville Assistant Warden Reed granted Plaintiff and Huggins a one-time visit. On November 18, 2008, Reed sent Huggins a letter informing her that the stop order would be lifted effective on that date. At some future date, however, Stateville again denied Huggins visitation with Plaintiff.

Plaintiff spoke with Stateville Assistant Warden Pfister in late 2010 about the stop order (Reed was no longer at Stateville). Pfister informed Plaintiff that Reed had allowed a one-time visit and that the stop order was still in effect. Subsequently, Huggins sent Pfister a request to have the stop order be rescinded. On November 25, 2010, Pfister denied the request, informing Huggins that because the stop order was put into place at Menard, she must make her request to Menard and that she could not visit anyone at Stateville until Menard rescinded the stop order.

Subsequently, Plaintiff sent Stateville Warden Coleman a copy of Reed's November 18, 2008 letter, informing Huggins that Reed had rescinded the stop order. Coleman informed Plaintiff that Huggins needed to have Menard rescind the stop order because it was the facility that issued the stop order.

In August 2011, Plaintiff requested restoration of her visiting privileges form Menard. In a September 28, 2011 response, Menard Assistant Warden Harrington denied the request, citing Huggins multiple violations and because she was also barred at another institution under an alias. Because she was "barred on multiple occasions under multiple aliases," her request was denied. She was also informed that she was entitled to have the restriction reviewed on an annual basis.

Plaintiff first alleges that the restriction on Huggins' visitation violates his Fifth Amendment right of double jeopardy. The Double Jeopardy Clause, applicable to the states by the Fourteenth Amendment, protects against a second prosecution for the same offense and multiple punishments for the same offense. *See Breed v. Jones*, 421 U.S. 519, 530-31 (1975). Its scope, however, is limited to criminal prosecutions. *Id.* Plaintiff is not being prosecuted a second time for the same criminal offense and he is not receiving multiple punishments for the same criminal offense. Thus, the restriction on Huggins visitation does not violate the Double Jeopardy Clause.

Plaintiff next alleges that the visitation restriction constitutes cruel and unusual punishment under the Eighth Amendment. Visitation restrictions in prisons are not a *per se* violation of the Eighth Amendment. *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). To succeed on a claim under the Eighth Amendment, Plaintiff would need to demonstrate that the restriction on his visitation with Huggins deprives him "of the minimal civilized measure of life's necessities," *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981), such as "adequate food, clothing, shelter, . . . medical care, and safety", *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). As to visitation in prison, "freedom of association is among the rights least compatible with incarceration" *Overton*, 539 U.S. at 131. Restricting Plaintiff's visitation with an individual who has been barred from visiting the prison because of multiple violations of the rules for such visitations, and the ability to seek rescission of that restriction, does not amount to a deprivation of "the minimal civilized measure of life's necessities," such as "adequate food, clothing, shelter, . . . medical care, and safety." *See Overton*, 539 U.S. at 131 (finding restriction on visitation does not violate the Eighth Amendment); *see also, Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) ("The denial of prison access to a particular visitor is well within the terms of confinement ordinarily contemplated by a prison sentence. . .") (internal quotation omitted).

Plaintiff also alleges, in conclusory manner, that the restriction of Huggins' visitation is a violation of his equal protection under the law. In order to establish a viable equal protection claim, Plaintiff must show that he was intentionally treated differently from others that are similarly situated and that there is no rational basis for that difference in how they treated. *LaBella Innetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 941 (7th Cir. 2010). Plaintiff makes no such allegations and the attachments to his complaint demonstrate otherwise. The attachments show that Huggins' visitation was restricted because of multiple violations during visitation. While it appears that Stateville Assistant Warden Reed rescinded the stop order, the attachments also demonstrate that the rescission of the stop order must be from the institution that imposed the restriction – here, Menard.

Lastly, Plaintiff alleges that the restriction on Huggins' visitation violates his right to due process. A procedural due process claim requires a plaintiff to show that a protected liberty or property interest was taken in a procedurally deficient manner. *Board or Regents of State Colls. v. Roth*, 408 U.S. 564, 570-71 (1972). Any protection for the liberty interest that Plaintiff might have in visiting with Huggins must derive from the Due Process Clause itself or from state law. *Sandin v. Conner*, 515 U.S. 472, 483-84 (1995). The Due Process Clause, however, does not guarantee an interest in prison visitation. *See Kentucky Dep't of Corrs.*, 490 U.S. at 460; *Overton*, 539 U.S. at 131. Thus, any liberty interest must come from state law and such interest is generally limited to deprivations that impose an "atypical and significant hardship on the inmate in relation to the normal incidents of prison life." *Sandin*, 515 U.S. at 483-84. Absent this "atypical and significant" deprivation, the procedural protections of the Due Process Clause are not triggered. *See Lekas v. Briley*, 405 F.3d 602, 608 (7th Cir. 2004). Restrictions on prison visitations, especially those imposed due to safety and security, do not constitute an atypical and significant deprivation to the normal incidents of prison life. *See Kentucky Dep't of Corrs.*, 490 U.S. at 461; *see also Williams v. Schomig*, Case No. 96 C 2029, 1997 WL 280703 at * 3, (N.D. Ill. May 21, 1997) (Gottschall, J.) (finding no due process violation from barring visitation of inmate's "female friend"), *Cook v. Cook*, No. 94-2679, 1997 WL 121207, (6th Cir. March 14, 1997) (affirming district court's finding of no state created liberty interest in visitation denial); *Macedon v. Cal. Dep't of Corrs.*, No. 02-15436, 2003 WL 21259773, (9th Cir. May 29, 2003) (affirming dismissal of due process claim based on refusal to allow visitation); *Pounds v. Newhart*, Case No. 12-256, 2012 WL 859555 at * 2, (E.D. Va. March 13, 2012) (dismissing due

| STATEMENT |
|---|

process claim based on inability to visit daughter while in local jail); *Alamo v. Lamas*, Case No. 11-2146, 2011 WL 7553526 at * 7, (M.D. Pa. Dec. 30, 2011) (lack of visitation did not amount to atypical and significant hardship in relation to ordinary incidents of prison life); *Frazier v. Levenhagen*, Case No. 09-437, 2009 WL 3762335 at * 2-3, (N.D. Ind. Nov. 9, 2009) (same).

Furthermore, even if Plaintiff had such a liberty interest, it could be reasonably restricted to serve the legitimate penological concerns of the prison. *See Thornburgh v. Abbott*, 490 U.S. 401, 407-08 (1989); *Turner v. Safley*, 482 U.S. 78, 89 (1987). The prison has a legitimate interest in maintaining security, including visitation by the public. *See Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005). Plaintiff's complaint and the included attachments demonstrate that the restriction on Huggins' ability to visit is based on her multiple violations at two different prisons; they also demonstrate that while the restrictions have not been lifted by the imposing prison, as required, the possibility of lifting the restrictions does exist.

For the foregoing reasons, Plaintiff has failed to state a claim upon which relief can be granted. Furthermore, any amended complaint as to the alleged constitutional violations would be futile based on the law discussed above.

Accordingly, the complaint is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915A. The dismissal of the complaint counts as a strike against Plaintiff under 28 U.S.C. § 1915(g). Plaintiff is advised that if a prisoner has had a total of three federal cases or appeals dismissed as frivolous, malicious, or failing to state a claim, he may not file suit in federal court without prepaying the filing fee unless he is in imminent danger of serious physical injury. 28 U.S.C. § 1915(g).

If Plaintiff wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(c). If Plaintiff does choose to appeal, he will be liable for the $450 appellate filing fee irrespective of the outcome of the appeal. *Evans v. Illinois Dept. of Corrections*, 150 F.3d 810, 812 (7th Cir. 1998). Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate another "strike."